IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| GLORIA RAMIREZ, )<br>      Plaintiff, )<br>)<br>v.            )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social )<br>Security Administration, )<br>      Defendant. ) | NO. EP-10-CV-00185-RFC<br>(by consent) |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner), denying her claim for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. For the reasons set forth below, the Commissioner's decision is affirmed.

**PROCEDURAL HISTORY**

On April 19, 2007, Plaintiff filed her application for benefits alleging disability due to impairments that became disabling on August 25, 2006. (R:83-87)[1] The application was denied initially and on reconsideration. (R:31, 32, 35-38, 41-44, 47) Pursuant to Plaintiff's request, an Administrative Law Judge (ALJ) held a hearing to review her application *de novo* on March 9, 2009,

---

[1] Reference to documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])". Reference to the record of administrative proceedings filed in this case is designated by "(R:[page number(s)])".

at which hearing both Plaintiff and a vocational expert testified. (R:23-30, 45-46) The ALJ issued his decision on July 29, 2009, denying benefits. (R:9-22) Plaintiff's request for review was denied by the Appeals Council on February 17, 2010. (R:3-5) On July 22, 2010, the Appeals Council retroactively granted Plaintiff an extension of time, to May 21, 2010, to file her civil action. (R:1)

On May 21, 2010, Plaintiff filed her complaint. (Doc. 1) The Commissioner filed an answer on September 1, 2010, and a certified copy of the transcript of the administrative proceedings was received on September 2, 2010. (Docs. 8, 10) On December 6, 2010, Plaintiff's brief was filed. (Doc. 21) On January 5, 2011, the Commissioner filed his brief in support of the decision to deny benefits. (Doc. 22)[2]

## ISSUES

Plaintiff presents the following issues for review:

1. Whether the ALJ erred by failing to specify which of Plaintiff's musculoskeletal impairments are severe;

2. Whether the ALJ erred by finding Plaintiff's history of breast cancer, mastectomy, and related subsequent surgeries were not severe impairments;

3. Whether the ALJ failed to properly assess the severity of Plaintiff's mental impairments;

4. Whether the ALJ erred by failing to include Plaintiff's limited ability to reach and hand limitations in his RFC finding; and

---

[2] This cause was initially referred and subsequently reassigned by United States District Court Judge Frank Montalvo to then Magistrate Judge Margaret F. Leachman. (Docs. 13, 15) It was then reassigned to Magistrate Judge Norbert J. Garney. (Doc. 17) Finally, it was reassigned to this Court on April 4, 2011. (Doc. 23) The parties were ordered to file a new notice of consent or non-consent to Magistrate Judge jurisdiction on April 7, 2011, and both parties entered notices consenting to this Court deciding the appeal. (Docs. 24-26)

      5.      Whether the ALJ's finding that Plaintiff can perform her past relevant work is not supported by substantial evidence.

(Doc. 21:2)

## DISCUSSION

### A. *Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984 (1995). Substantial evidence is more than a scintilla, but can be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In reviewing the substantiality of the evidence, the Court must consider the record as a whole and "must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In applying the substantial-evidence standard, the court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). It may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision," because

substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner, and not the courts, to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

### B.     *Evaluation Process*

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a medically determinable impairment that is severe; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. A person's residual functional capacity ("RFC") is what she can still do despite her limitations or impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p.

An individual applying for benefits bears the initial burden of proving that she is disabled for purposes of the Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof on the first four steps, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).

C.  **The ALJ's Hearing Decision**

First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2011. (R:17) The ALJ also found that Plaintiff had not engaged in substantial gainful activity since August 25, 2006, the alleged onset date. (*Id.*)

At the second step, the ALJ found that Plaintiff had severe musculoskeletal impairments "as set forth in the body of this decision." (R:18) The ALJ found that neither Plaintiff's history of mastectomy nor her alleged psychological complaints amounted to a severe impairment. (R:12)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments. (R:18)

After careful consideration of the entire record, the ALJ found that Plaintiff had the RFC:

> to perform the full range of sedentary work as defined in 20 CFR [§] 404.1567(a). Furthermore, the undersigned finds that [Plaintiff] has no significant non-exertional limitations of function and she retains a residual functional capacity to perform semiskilled work as defined in the Regulations.

(R:19)

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a telephone operator as it is generally performed in the national economy, as described by the Dictionary of Occupational Titles ("DOT") at code 299.357-014. (R:21)

The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 25, 2006, through the date of the ALJ's decision. (R:22)

D. *Analysis*

    1. **The ALJ's failure to specify which of Plaintiff's musculoskeletal impairments are severe at step two does not require remand.**

Plaintiff claims that the ALJ failed to specify anywhere in his decision which musculoskeletal impairments the ALJ intended to find severe. (Doc. 21:3-4) Such failure, Plaintiff argues, places the ALJ's step two finding beyond meaningful judicial review and makes it impossible to know whether the ALJ's RFC finding appropriately accommodates for such impairments. (*Id.*)

The Commissioner argues that the ALJ thoroughly discussed Plaintiff's musculoskeletal impairments in the body of his decision, noting that Plaintiff complained of upper extremity, lumbar spine, and shoulder pain, and extensively discussing the objective evidence, or lack thereof, to support such complaints, in finding Plaintiff limited to only sedentary work. (Doc. 22:4)

Plaintiff was not denied benefits at step two. Nor does she contend that any of her musculoskeletal impairments should have been found to meet or equal listing level severity at Step three. In determining Plaintiff's RFC, all of Plaintiff's impairments, even those that are not severe, are to be considered. Therefore, the ALJ's lack of specificity at step two, while not ideal, is not cause for reversal. Procedural perfection is not required; a decision will not be vacated unless substantial rights have been affected. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) *(per curiam)*. Plaintiff is not entitled to relief on this claim.

    2. **The ALJ's finding that Plaintiff's history of breast cancer, mastectomy, and related subsequent surgeries did not constitute a severe impairment does not require reversal or remand.**

Plaintiff contends that the ALJ erred in failing to find Plaintiff's history of breast cancer and mastectomy to be a severe impairment. (Doc. 21:4-7) Plaintiff claims that Plaintiff's history of

breast cancer and mastectomy likely met the requirements of Listing 13.10 for at least some period of time, such that the ALJ's failure to find these conditions severe prejudiced Plaintiff and requires remand. (*Id.*)

Plaintiff asserts that Dr. Porras's diagnosis of "[b]reast cancer status-post mastectomy and reconstructive surgeries," and "[e]dema of the upper extremities suggestive of mildly impaired lymphatic or venous drainage due to extensive cicatricial tissue of confluent axillary area[]" supports Plaintiff's complaints of swelling in her arms and hands, caused by her history of breast cancer, limiting her ability to reach. (Doc. 21:5) The ALJ, however, considered and rejected Plaintiff's alleged limited ability to reach.

Plaintiff also argues that Plaintiff's need to miss work frequently due to breast cancer and subsequent mastectomy and other surgeries, treatment, and follow up doctor visits, would have prevented her from performing any work during the relevant time period. (Doc. 21:6) Plaintiff argues that her mastectomy, therefore, should have been found to be a severe impairment for at least a closed period of time during which Plaintiff was required to miss work on a regular basis for treatment. (*Id.*)

The Commissioner counters, citing the record, which shows that Plaintiff used sick leave for her mastectomy in December 2004, and three reconstructive surgeries between 2005 and 2006 and returned to her job at the conclusion of her treatment. (Doc. 22:5 (citing R:173, 178, 187)) Plaintiff was not laid off due to medically-necessary absences, but due to economic downsizing. (Doc. 22:6) After she was laid off in August 2006, she only saw her treating oncologist for routine follow-ups a few times between 2006 and 2007, each time voicing no complaints or difficulties. (*Id.* (citing R:160-61, 225-26, 280))

Plaintiff suggests that her history of breast cancer and mastectomy "likely met the requirements of Listing 13.10 for at least some period of time." (Doc.21:6-7) Listing 13.10 (Malignant Neoplastic Diseases: Breast) requires that one of the following three criteria be met: (1) Locally advanced carcinoma (inflamatory carcinoma, tumor of any size with direct extension to the chest wall or skin, tumor of any size with metastases to the ipsilateral internal mammary nodes); (2) Carcinoma with distant metastases; (3) recurrent carcinoma, except local recurrence that remits with antineoplastic therapy. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 13.10. Plaintiff points out that section 13.00H(2) requires that, once a listing in section 13.00 of the regulations is met, the impairment continues to meet the listing requirements, as a matter of law, until the condition has been found to be in complete remission for a period of at least three years. (Doc.21:6 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 13.00H(2))

Plaintiff provides no argument, however, regarding which criteria of listing 13.10 Plaintiff's breast cancer *likely* met, for Listing 13.00(H)(2) to apply. (*See* Doc. 21:6-7) Nor does Plaintiff point to any medical record in evidence to support such assertion. (*See id.*) Plaintiff's consultative physical exam recounts a previous surgical history including "[a] left breast lumpectomy in 2004 that failed to remove all the malignant tissue and required then left breast mastectomy at Thomason hospital." (R:178) This Court has found no indication in the medical records that were before the ALJ of an advanced status carcinoma, a distant metastases, or a recurrence, nor was any allegation or argument provided to the ALJ that would suggest that such issue required further development. None of the state agency physician consultants, familiar with the regulations, cited to any records

8

establishing that the criteria of Listing 13.10 was met.[3]  The Court also notes that Plaintiff did not present any argument to the ALJ that Plaintiff's history of breast cancer would meet or medically equal listing severity.  It was the Plaintiff's burden at the third step of the sequential evaluation process to establish that she met or equaled a listing impairment.

Plaintiff has not demonstrated that the ALJ erred in failing to find Plaintiff's history of breast cancer to be a severe impairment or that Plaintiff was prejudiced by any such error.  The ALJ was required to consider even non-severe impairments in determining Plaintiff's RFC and in making a determination of disability at step four or five.

> 3. **The ALJ properly assessed Plaintiff's alleged mental impairments.**

Plaintiff claims that Dr. Barrientos's diagnosis that Plaintiff had a mild, Amnestic disorder resulting in a global assessment of functioning of 60, indicates that the ALJ erred in finding Plaintiff's mental impairment to be not severe. (Doc. 21:7)  Plaintiff argues that the ALJ failed to follow the procedure required by the regulations for evaluating mental impairments, such that the ALJ violated its own rules during the proceeding, requiring remand for proper evaluation. (Doc. 21:7-8)

In her application, Plaintiff alleged nervousness. (R:124)  She alleged that she had problems with sleep, memory and concentration, fatigue, nervousness, and depression. (R:125)  She stated that she forgets her doctor's appointments and things that she has to do. (R:127) Plaintiff stated that she had not seen anyone for any emotional or mental problems that limit her ability to work. (R:135,

---

[3] Plaintiff's attorney did argue at the end of the hearing that the ALJ "might consider a closed period for the time that she was out from May 25 [2006] to October of [2008]." (R:29) Plaintiff's attorney, however, did not outline the reason for such a closed period being considered. (*Id.*)

146) Plaintiff also represented that she did not have difficulty finishing tasks or making decisions and that she could travel alone. (R:128-29)

In her June 2007 consultation with Dr. Enrique Porras, Plaintiff denied anxiety or depression. (R.179) Also in June 2007, Dr. Barrientos stated Plaintiff complained that she was easily distracted, could not concentrate, gets confused and lost when she drives, and had depression. (R:187). Dr. Barrientos found Plaintiff to be mentally alert, with a relaxed mood and appropriate affect and speaking in a normal tone of voice, that Plaintiff's cognitive processes and memory of events appeared normal, and that she was able to focus on the questions he asked her and provide answers to those questions. (R:186-189) In August 2007, her oncologist noted that she showed normal affect and no psychiatric symptoms. (R:225-26)

The regulations set out a "special technique" for assessing the severity of a mental impairment. *See* 20 C.F.R. § 404.1520a(b)(2), (d).[4] The steps outlined in § 404.1520 also apply to the evaluation of mental impairments. 20 C.F.R. § 404.1520a(a). Section 404.1520(a)(4)(ii) requires a finding of a medically-determinable impairment that meets the duration requirement and is severe before moving to the next step in the sequential evaluation process. The first step in the

---

[4] The regulations require that a special technique be used to evaluate mental impairments. 20 C.F.R. § 1520a. Where there is a medically-determinable mental impairment, four areas of limitation must be ranked, the first three—activities of daily living, social functioning, and concentration, persistence, or pace—on a scale of none, mild, moderate, marked, and extreme, and the fourth— episodes of decompensation—on a scale of none, one or two, three, four or more. 20 C.F.R. § 1520a(c)(3)-(4). These ratings are used to determine whether the individual's mental impairment is severe. The regulations provide that where the degree of limitation in the first three areas is rated as none or mild and the fourth is none, a conclusion of nonseverity will generally result unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities. 20 C.F.R. § 1520a(d)(1).

special technique for assessing mental impairments is to determine whether there is a medically-determinable mental impairment. *See* 20 C.F.R. § 404.1520a(b)(1) ("we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)."). The introductory section for mental disorders in the listings of impairments specifies that the existence of a medically determinable impairment(s) *of the required duration* must be established by medical evidence consisting of symptoms, signs, and laboratory findings. 20 C.F.R. Pt. 404, Subpart P., App. 1, Listing 12.00(B)

The ALJ acknowledged that Dr. Barrientos had diagnosed Plaintiff with a "mild" amnestic disorder. (R:18) The ALJ, however, found that such diagnosis was based primarily on Plaintiff's complaints as reported to Dr. Barrientos and that his medical findings did not substantiate his diagnosis overall. (R:18) The ALJ noted that the record is void of any other reports or treatment records from any psychiatrist, psychologist, or mental health counselor, that Plaintiff admitted that she had not consulted a psychiatrist and was not taking any psychiatric medications, and that there is no evidence that Plaintiff was ever prescribed any psychiatric or other medications. (*Id*.) The ALJ also noted that Plaintiff did not testify about any problems with her attention, concentration, or memory. (*Id*.) The ALJ found that Plaintiff's failure to seek any medical treatment for her reported mental/psychological problems reflected adversely on her overall credibility. (*Id*.)

Although the ALJ's discussion appears under the title "[t]he claimant has "non-severe" impairments as discussed below," the ALJ concludes the discussion by stating that Plaintiff had failed to meet her burden of proving that she had a "severe" amnestic disorder for any continuous 12-month period under review. (*Id*.) This finding concluded the ALJ's application of the special

technique at the first step under section 404.1520a(b)(1), eliminating any necessity for the ALJ to proceed through the subsequent steps for determining severity.

Plaintiff has failed to establish that the ALJ's conclusion at that initial step was erroneous or unsupported by substantial evidence. An impairment must be established by medical evidence; neither a Plaintiff's description of her symptoms nor an unsupported diagnosis is sufficient to establish an impairment. 20 C.F.R. §§ 404.1508, 404.1528(a). The ALJ recognized Dr. Barrientos' diagnosis, but also recognized that it was based entirely on Plaintiff's own report of symptoms. (R:18)

Plaintiff argues that mental impairments are not subject to the normal duration requirement, and may be considered disabling despite occasional periods of remission. (Doc. 21:7 (citing *Moore v. Sullivan*, 895 F.2d 1065, 1069 (5th Cir. 1990)) The duration requirement, nonetheless, is still applicable. Medical evidence is needed to establish "the existence of a medically determinable impairment(s) of the required duration. . . ." Listing 12.00B. Evaluation of an alleged mental disorder requires sufficient evidence to project the probable duration of the impairment. Listing 12.00D. "The symptoms and signs may be intermittent or continuous depending on the nature of the disorder." Listing 12.00B.

Plaintiff, however, did not present evidence of occasional periods of remission regarding her alleged mental impairment. The only evidence of the alleged impairment were her own allegations of symptoms in her applications for benefits and in her mental status consultation examination. Plaintiff's failure to complain of symptoms of her alleged mental impairment to her treating physicians over the years, or to seek treatment for such symptoms, also resulted in a record devoid

of longitudinal evidence sufficient to project a probable duration of the impairment to find that the required duration was satisfied.

Further, a medical condition that can be reasonably remedied is not disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (citing 20 C.F.R. § 404.1530(a), (b))  There is no evidence that Plaintiff ever complained to her treating physicians of, or sought counseling, therapy or other medical or psychiatric intervention for, her alleged inability to concentrate or her periods of confusion.  The ALJ properly considered Plaintiff's failure to seek treatment for her condition. Although Plaintiff claimed she could not afford medical treatment or medications, there is no evidence that she sought, much less exhausted, any possible alternatives for treatment or that she would be disabled without treatment. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (where there is no evidence that condition would be disabling without regular treatment, the ALJ may properly consider the lack of treatment otherwise unavailable due to indigency as evidence of non-disability).

The Court also notes that the psychiatric review technique completed by the state agency medical consultant ranked Plaintiff's degree of limitation as none or mild in the first three categories and none in the fourth category. (R:200) Even had the ALJ adopted these findings and recited them in his decision, such rankings generally result in a finding of non-severity. *See* 20 C.F.R. § 1520a(d)(1).  Plaintiff does not cite to, and this Court does not find, any evidence in the record to support a higher ranking in any category of functioning.

Plaintiff has failed to establish that the ALJ failed to apply the special technique to Plaintiff's alleged mental impairment by not rating the degree of functional limitation in the various categories

set forth in the special technique. Plaintiff has failed to show that the ALJ erred in not finding Plaintiff's alleged mental impairment to be severe. Plaintiff is not entitled to relief on this claim.

> 4. **The ALJ's determination that Plaintiff did not have a reaching or handling limitation is supported by substantial evidence.**

Plaintiff claims that the ALJ erred by not finding that Plaintiff's RFC is limited with respect to her ability to reach with her left arm and handle with her left hand. (Doc. 21:8-1) Plaintiff argues that the ALJ's determination is based on an incorrect recitation of Plaintiff's testimony and speculation rather than record evidence. (*Id*.) Plaintiff further asserts that the ALJ erred by failing to state what weight he was giving to the state agency medical consultant's RFC assessment and in failing to provide good reasons, as required by 20 C.F.R. § 404.1527(f)(2)(ii),[5] for rejecting the assessment that Plaintiff is limited in her ability to reach in all directions with her left arm. (*Id*.) Finally, Plaintiff contends that the ALJ's finding that Plaintiff is not limited in her ability to reach contradicts both Dr. Porras' examination report and the state agency physicians' RFC assessment. (Doc. 21:11)

Plaintiff asserts that the ALJ misstated the record as it pertains to Plaintiff's testimony regarding her ability to use her hands. (Doc. 21:10-11) The ALJ stated that Plaintiff had admitted in her testimony that she does use her hands for meal preparation and computer work. (R:21) The Court does not find any testimony that could be so construed. When the ALJ asked whether Plaintiff had a computer at home, Plaintiff answered "Yes, but I do not know how to use it. I don't use it

---

[5] 20 C.F.R. § 404.1527(f)(2)(ii) states in part:
Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a state agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinion from treating sources, . . .

because I don't have Internet service and you require a phone and I don't have a phone." (R:28) Plaintiff also testified that her daughter helps her with laundry and cleaning and that Plaintiff can peel a potato with her right hand, which she does not have problems using, but that she has to do things slowly because of her other hand, with which she has difficulty regarding both strength and movement. (R:28)

      Plaintiff further contends that the ALJ's decision was improperly based, in part, on the ALJ's speculation that Plaintiff's work as a file clerk "likely consists of sedentary work and requires the claimant to reach with both of her upper extremities." (R:20) The Commissioner argues that the ALJ's conclusion that Plaintiff's ability to perform the reaching requirements of her filing clerk job also meant that she could perform the reaching requirements of her past relevant work as a telephone operator was logical because the DOT indicates that both positions are sedentary work requiring frequent reaching for objects. (Doc. 22:9) Plaintiff, however, does not allege a complete inability to perform reaching functions, only the inability to do so bilaterally; she does not allege an inability to reach with her right arm. The DOT does not answer whether both positions, as generally performed in the national economy, require frequent reaching bilaterally, and certainly does not answer whether the way in which Plaintiff was performing the job of a file clerk was requiring her to reach with both arms. Thus, the ALJ's conclusion flows in part from his assumption that Plaintiff's work as a file clerk required her to frequently reach bilaterally, a fact issue that was not developed in the record. Plaintiff is correct that such speculation is not evidence that Plaintiff has an unlimited ability to reach.

      Likewise, Plaintiff is correct that the ALJ's RFC assessment contradicted Dr. Blacklock's assessment that Plaintiff was limited in reaching in all directions with her left arm. (*Compare* R:19-

21, 207)  Plaintiff is also correct that the ALJ did not state what weight he assigned to Dr. Blacklock's assessment of limited reaching ability; the ALJ did not use any terms such as "no weight" or "controlling weight" or "great weight." (*See* R:19-20)  The ALJ's discussion, however, did explain why the ALJ was not adopting that particular limitation.

Despite the errors noted above, the ALJ's exclusion of handling and reaching limitations in Plaintiff's RFC is supported by substantial evidence.  As to Plaintiff's alleged handling limitation, Dr. Blacklock explicitly found that Plaintiff was not limited in handling or fingering.  (R:207)  This finding was based on a review of all of the records, including Dr. Porras' consultative examination report.  Dr. Blacklock noted that the range of motion in Plaintiff's wrists and hands was intact, that her strength was 4/5 bilaterally, and that she had no problems using her hands, but has edema.  (R:207)

Dr. Porras noted that in his examination Plaintiff denied difficulty in using her hands although she complained of pain of the forearm and edema of the hands.  (R:179)  Upon examination, Dr. Porras found the range of motion in Plaintiff's elbows, wrists, and thumbs to be intact bilaterally, and did not notice any swelling.  (R:180)  Thus, the only evidence of limitation in Plaintiff's use of her hands is her own testimony, which contradicts her denial to Dr. Porras that she had no problems using her hands.  Plaintiff's treatment records do not reflect either complaints of swelling in her hands, pain in her forearm, or of being unable to use her left hand, and Plaintiff was not taking any pain medication. (*See* R:178-180)  The ALJ noted that Plaintiff did not take any pain medication for her hands; he found her to be not credible regarding the intensity and affect of the pain in her hands.  (R:21) This decision is supported by substantial evidence.

With respect to Plaintiff's alleged reaching limitation, Dr. Blacklock's reaching limitation was explained only by reference to Dr. Porras's consultation report notes, including that Plaintiff had difficulty elevating her left arm and reaching. (R:207) Reference to Dr. Porras's report reveals that difficulty in elevating and reaching with her left arm appears only in the review of systems section of the report, detailing Plaintiff's subjective report of symptoms to Dr. Porras, not Dr. Porras' own observations or results of clinical testing. (R:179) Plaintiff reported having pain over her left shoulder worsened by physical activity and associated with swelling of her hands. (R:178-179) Plaintiff complained of pain in the forearm and edema and pain of the hands which would develop during routine chores, clarifying that due to the weakness of her left arm, she uses her right arm more. (R:179) Although she was able to perform all domestic duties, she reported that such activities were followed by pain. (*Id.*)

Notes from the physical examination Dr. Porras conducted reflect that Plaintiff's range of motion in her shoulders was intact, as was that of her elbows. (R:180) Dr. Porras did note tenderness over Plaintiff's left lateral and medial epicondles. (*Id.*) Examination of Plaintiff's extremities reflect "no joint swelling; no edema appreciated. . . ." (*Id.*) Dr. Porras assessed Plaintiff as having the following medical problems: (1) left lateral and medial epicondylitis;[6] (2) edema of upper extremities suggestive of mildly impaired lymphatic or venous drainage due to extensive

---

[6] Lateral epicondylitis, also known as tennis elbow, is painful inflammation of the tendon at the outer border of the elbow resulting from overuse of lower arm muscles (as in twisting of the hand). *See* http://www.thefreedictionary.com/lateral+epicondylitis http://www.merriam-webster.com/medical/tennis+elbow (Last viewed April 24, 2012) Medial epicondylitis, also known as golfer's elbow, is a painful inflammation of the muscles on the inside of the forearm caused by exertion. *See* http://www.thefreedictionary.com/medial+epicondylitis (last viewed April 24, 2012).

cicatricial tissue of confluent axillary area; (3) breast cancer status-post mastectomy and reconstructive surgeries; and (4) left scapular pain of myofascial nature. (R:181)

No other treatment records indicate that Plaintiff either complained of or was observed to have edema in her shoulder or a reduced range of motion or difficulty in elevating her left arm. Again, the ALJ noted that despite alleging disabling pain in her shoulder, Plaintiff did not allege that she was taking any pain medication. (R:21) The ALJ found Plaintiff to be not credible regarding the intensity or limiting effects of her condition. (*Id.*)

Additionally, at the hearing, when asked if she could do the phone operator job today, Plaintiff testified only that she would not be able to do so if she had to lift anything heavy because the problem with her hands is that she cannot lift heavy objects. (R:27) Plaintiff did not assert that she would not be able to perform that job because it required reaching with her left arm that she was no longer able to do. (R:27-28)

Although not all of the reasons set forth by the ALJ support his RFC assessment, his decision to exclude the alleged handling and reaching limitations are, nonetheless, supported by substantial evidence in the record. Plaintiff is not entitled to relief based on the absence of such limitations in her RFC assessed by the ALJ.

> **5.  The ALJ's finding that Plaintiff can perform her past relevant work is supported by substantial evidence.**

Plaintiff claims that the vocational expert misidentified Plaintiff's past work as a "telephone solicitor" or "telemarketer" when it should have been identified as a "telephone operator" or a "receptionist." (Doc. 21:12-15) At the hearing, the ALJ asked the expert a hypothetical question regarding whether the ability to reach with the non-dominant hand on no more than an occasional

basis would accommodate either of Plaintiff's prior jobs. (R:27) The expert responded "[i]t would not affect the telemarketer position, but it would the sewing machine operator position." (*Id*.) Plaintiff argues that, had the expert correctly identified Plaintiff's past work, the vocational expert's testimony in response to the ALJ's hypothetical question would have been different and would have altered the ALJ's determination at step four. (Doc. 21:12-15)

As Plaintiff argues, the ALJ was incorrect in stating that Plaintiff had failed to describe her previous relevant work as a telephone operator. (Doc. 21:13; R:21, 115) Plaintiff had described that job, as she actually performed it, as requiring continuous reaching, 8 hours of reaching in a 10-hour day. (R:115) According to the DOT, even as generally performed in the national economy, both a telephone operator and a receptionist, require reaching frequently (from 1/3 to 2/3 of the time) and either frequent or constant handling. DOT Listings 235.662-022 (operator) and 237.367-038 (receptionist).

The ALJ referred to Plaintiff's prior relevant work as that of an "operator at the phone service center" and as "phone operator." (R:26-27) The vocational expert, however, identified Plaintiff's previous relevant work as that of telephone solicitor, DOT Listing 299.357-014, with the alternate titles of telemarketer and telephone sales representative. (*Id*.) The position identified by the expert requires only occasional reaching and handling, but frequent fingering. DOT Listing 299.357-014.

The Commissioner essentially concedes that the vocational expert misidentified Plaintiff's past relevant work as a telemarketer instead of a telephone operator. (*See* Doc. 22:10-11) But such misidentification, the Commissioner argues, does not undermine the ALJ's finding that Plaintiff could perform her past relevant work. (*Id*.) The Court agrees. Because the ALJ did not find that Plaintiff had a reaching limitation, the ALJ did not rely on the vocational expert's testimony as to

19

the effect of such limitation on Plaintiff's ability to perform her prior relevant work.  (*See* R:19-21) Therefore, Plaintiff is not entitled to relief based on the expert's misidentification.

## CONCLUSION

The Court concludes that any deviation from the relevant legal standards was harmless and that the ALJ's decision is supported by substantial evidence.  Based on the foregoing, it is hereby **ORDERED** that the Commissioner's determination be **AFFIRMED**.

**SIGNED** and **ENTERED** on May 3, 2012.

_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE